1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

9   GARY E. MASON,

10              Plaintiff,

11        v.

12   RAD POWER BIKES, INC. and RAD POWER
     BIKES, LLC.
13
                         Defendants.
14

15

NO.: _____

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

16
17
18
19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT
Case No. _____
011149-11/2186333 V1

**HAGENS BERMAN**

1

2

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................1

II.     JURISDICTION ..................................................................................3

III.    PARTIES .............................................................................................4

        A.      Plaintiff Gary E. Mason ...........................................................4

        B.      Defendants ...............................................................................5

IV.     SUBSTANTIVE ALLEGATIONS ......................................................5

        A.      The Dangerous Rise of e-bikes. ...............................................5

        B.      Rad Power Bikes Quickly Became the Most Popular e-Bike
                Manufacturer in the United States. ..........................................7

        C.      Rad Bikes are defectively designed because they use disc brakes in
                conjunction with a quick-release front wheel, a known safety
                hazard. ......................................................................................9

        D.      Despite knowing the dangerous nature of e-bikes and Rad's
                Defective e-bike designs, Rad continuously markets its Defective
                e-bikes as a safe, family-friendly mode of transportation..................14

V.      TOLLING OF STATUTES OF LIMITATIONS ................................19

        A.      Discovery Rule ......................................................................19

        B.      Fraudulent Concealment ........................................................20

        C.      Estoppel..................................................................................20

VI.     WASHINGTON LAW APPLIES TO NATIONWIDE CLAIMS ..................21

VII.    CLASS ALLEGATIONS ....................................................................21

VIII.   CAUSES OF ACTION .......................................................................24

FIRST CAUSE OF ACTION  STRICT LIABILITY – WASHINGTON
PRODUCTS LIABILITY ACT (RCW 7.72.030(2)(A)) *ON BEHALF OF
THE NATIONWIDE CLASS* ................................................................24

SECOND CAUSE OF ACTION  BREACH OF IMPLIED WARRANTY –
WASHINGTON PRODUCTS LIABILITY ACT (RCW 7.72.030(2)(C))
*ON BEHALF OF THE NATIONWIDE CLASS*................................................25

**HAGENS BERMAN**

THIRD CAUSE OF ACTION  VIOLATION OF THE *MAGNUSON*-MOSS
    WARRANTY ACT (15 U.S.C. § 2301, *ET SEQ.*) *ON BEHALF OF THE*
    *NATIONWIDE CLASS* ...................................................................................27

FOURTH CAUSE OF ACTION  VIOLATION OF THE WASHINGTON
    CONSUMER PROTECTION ACT (RCW 19.86.010, *ET SEQ.*) *ON*
    *BEHALF OF THE NATIONWIDE CLASS* ...........................................................29

FIFTH CAUSE OF ACTION  UNJUST ENRICHMENT *ON BEHALF OF THE*
    *NATIONWIDE CLASS* ...................................................................................31

SIXTH CAUSE OF ACTION  ALTERNATIVE COUNT FOR COMMON LAW
    STRICT PRODUCT LIABILITY *ON BEHALF OF THE NATIONWIDE*
    *CLASS* ........................................................................................................33

SEVENTH CAUSE OF ACTION  ALTERNATIVE COUNT FOR BREACH OF
    IMPLIED WARRANTY *ON BEHALF OF THE NATIONWIDE CLASS* .......................34

EIGHTH CAUSE OF ACTION  ALTERNATIVE COUNT FOR VIOLATION
    OF STATE CONSUMER PROTECTION ACTS *ON BEHALF OF THE*
    *NATIONWIDE CLASS* ...................................................................................35

REQUEST FOR RELIEF ......................................................................................39

DEMAND FOR JURY TRIAL ...............................................................................39

**HAGENS BERMAN**

Plaintiff Gary E. Mason, by and through his attorneys, brings this class action complaint against Rad Power Bikes, Inc. and Rad Power Bikes, LLC (collectively "Rad" or "Defendants"), on behalf of himself and all others similarly situated, and alleges, upon his personal knowledge as to his own actions and upon information and belief as to all other matters, as follows:

## I.    INTRODUCTION

1.     Consumers purchase bikes for varying reasons, but at a baseline, all bikes are used for fast transportation. Bike manufacturers sell their bikes, knowing that consumers will use their products to get from point A to point B, and that consumers will be traveling at fast speeds, braking, and carrying cargo or passengers.

2.     Should a bike manufacturer learn of any safety defects in their bikes, it is their responsibility to immediately warn the public and provide a comprehensive remedy. This mandate is even more crucial in the case of electric bikes, or "e-bikes," because they are designed to meet speeds of 20 miles per hour or more.

3.     Rad manufacturers e-bikes, which are motor-powered bicycles that allow both rider and motor to assist propulsion and can reach speeds of 20 miles per hour. In fact, Rad manufactures defective e-bikes that put riders and passengers, including children, at serious risk of high-speed crashes and lethal injury.

4.      Specifically, the combination of Rad e-bikes' heavy weight, bike fork design with quick release skewers, and quick release parts results in a hazardous and patently unsafe design on all Rad e-bikes (the "Defective e-bikes"). As a result of Defendants' faulty design, the heavier than usual weight of the e-bikes, and the fork design with quick release skewers (the "Defect"), many riders, such as Plaintiff Gary Mason, have experienced catastrophic malfunctions.

5.     Rad e-bikes' defective design causes the front wheel to disengage from the bike frame while operating, resulting in increased instability or wobbling and even complete dismantling of the bike. This defective design causes bike operators, like Mr. Mason, to be sent flying over the handlebars or otherwise crash while biking at high speeds.

HAGENS BERMAN

1    6.    In recent years, e-bike popularity has soared. The *New York Times* reported that

2    "conservative forecasts" estimate electric bikes sales in the United States will "grow to nearly a

3    million by 2023, up from 650,000 this year."[1]

4    7.    Defendants are at the forefront of this fast-rising industry.

5    8.    Rad designs, manufactures, and sells e-bikes direct to consumers.

6    9.    Since Rad was founded in 2007, it has grown to be widely considered the largest

7    e-bike seller in the United States.[2] As of September 2022, Rad total ridership was more than

8    500,000.[3]

9    10.    By 2019, Rad had approached $100 million in sales.[4] In October 2021, Rad

10    announced a massive new funding round of $154 million, bringing the staggering total

11    investment in the company to $329 million since Rad's inception.[5]

12    11.    Despite their behemoth financial backing and increasing popularity, Defendants

13    have continued to develop and sell dangerous and improperly designed e-bikes that put riders

14    and passengers, including children, at significant risk of dangerous crashes.

15    12.    Rad markets its e-bikes for use – among other things – by commuters, including

16    adolescents and children.

17    13.    Indeed, most Rad e-bike models feature rear passenger "seats," or advertise an

18    easy passenger seat addition.

19    14.    Defective e-bikes put Rad riders and passengers, including children, at serious

20    risk of crash-related injuries and even death because their wheels and brakes can malfunction

21    when braking occurs.

22

23    ――――――――――――

[1] Bradley Berman, *The Teenage Tinkerer Behind an E-Bike Revolution*, The New York Times (Aug. 6,
24    2020), available at https://www.nytimes.com/2020/08/06/business/electric-ebikes-rad-power-bikes.html
(last accessed Aug. 30, 2023).

25    [2] *Id.*

26    [3] https://www.radpowerbikes.com/ (last accessed Aug. 30, 2023).

27    [4] *Id.*

[5] https://electrek.co/2021/10/28/rad-power-bikes-lands-giant-154m-investment-will-begin-north-
28    american-e-bike-production/ (last accessed Aug. 30, 2023).

**HAGENS BERMAN**

15. Despite knowing that the use of disc brakes in conjunction with quick-release skewers can cause dangerous and unsafe braking, Defendants continue to manufacture, sell, and market their Defective e-bikes as safe, family-friendly transportation.

16. Accordingly, Plaintiff brings this action to redress Defendants' misconduct. Plaintiff seeks relief on behalf of himself and all other Rad e-bike purchasers, including repair, replacement, and/or refund; extended warranty; injunctive relief resolving (and appropriate curative notice regarding) the existence and cause of the Defective e-bikes; reimbursement of all expenses associated with the repair or replacement of the e-bikes and damage caused by the Rad e-bikes; and reimbursement of attorney fees and expenses.

## II.    JURISDICTION

17. This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. §§1332(d)(2) and (6) because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

18. Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendants transact substantial business and are headquartered in this district. Defendants advertised in this district and received substantial revenue and profits from sales of the Defective e-bikes in this district. Therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

19. This Court has personal jurisdiction over Defendants by virtue of their transactions and business conducted in this judicial district, and because Defendants are headquartered in this district. Defendants have transacted and done business, and violated statutory and common law, in the State of Washington and in this judicial district.

HAGENS BERMAN

III.   PARTIES

A.   **Plaintiff Gary E. Mason**

20.   Plaintiff Gary E. Mason is a resident of Bethesda, Maryland, who purchased the RadRunner Electric Utility Bike ("RadRunner") in March of 2021. Mr. Mason purchased his RadRunner directly from Rad online.

21.   On May 31, 2022, Mr. Mason was riding his RadRunner e-bike in Bethesda, Maryland to the grocery store. While riding his e-bike, Mr. Mason braked to avoid a turning car.

22.   Upon braking, Mr. Mason was thrown over the handlebars – and saw the front wheel flying through the air. Mr. Mason landed on his back, resulting in five broken ribs and a broken clavicle.

23.   Mr. Mason spent two nights in the trauma ward at Johns Hopkins Medicine - Suburban Hospital in Bethesda, Maryland. As a result of his severe injuries, Mr. Mason spent six weeks in rehabilitation and physical therapy.

24.   Mr. Mason purchased his Defective e-bike because he believed the e-bike was safe and reliable. When shopping for his Defective e-bike, Mr. Mason researched and considered the reliability and quality of the model and manufacturer. Prior to purchasing his Defective e-bike, Mr. Mason heard, viewed, and/or read Rad marketing materials and advertisements including digital brochures and internet advertisements, which were disseminated from Washington, that touted the quality, reliability, and safety of Rad e-bikes.

25.   At no point before Mr. Mason purchased his e-bike did Defendants disclose to him that his e-bike was not safe or dependable, or that it suffered from defects which can manifest in numerous ways such as becoming unsafe while braking, front wheel disengaging when in motion, and extreme instability.

26.   Mr. Mason did not receive the benefit of his bargain. Mr. Mason purchased an e-bike that is of a lesser standard, grade, and quality than represented, and he did not receive an e-bike that met ordinary and reasonable consumer expectations regarding safe and reliable operation.

**HAGENS BERMAN**

1    27.    Had Defendants disclosed the Defect, Mr. Mason would not have purchased his

2    Defective e-bike.

3    28.    Mr. Mason purchased his e-bike new, and it included the manufacturer's

4    warranty. Mr. Mason still owns his Defective e-bike, but no longer uses it following his accident.

5    At all times, Mr. Mason maintained his RadRunner in accordance with Rad's user manual and

6    best practices for road bikes.

7    **B.    Defendants**

8    29.    Defendant Rad Power Bikes, Inc. is a Delaware corporation with headquarters in

9    Seattle, Washington, that designs, manufactures, and sells e-bikes across North America. Rad

10   Power Bikes, Inc. sells e-bikes online to all 50 US states as well as internationally in Europe and

11   Canada.

12   30.    Defendant Rad Power Bikes, LLC is a Washington limited liability company that,

13   upon information and belief, designs, manufactures, and sells e-bikes across North America

14   (together with Defendant Rad Power Bikes, Inc.). The Rad Defendants sell e-bikes online to all

15   50 US states as well as internationally in Europe and Canada.

16   **IV.    SUBSTANTIVE ALLEGATIONS**

17   **A.    The Dangerous Rise of e-bikes.**

18   31.    The last decade has seen an incredible surge in the popularity of e-bikes, which

19   was further spurred by the COVID-19 pandemic. The Atlantic reports that "[t]he pandemic drove

20   a 240 percent surge in e-bike sales from 2020 to 2021," a likely result of the desire to avoid

21   public transportation or crowds.[6]

22   32.    One website noted that "E-bike sales soared during the COVID-19 pandemic with

23   an increase of 145% from 2019 to 2020, outpacing traditional bicycle sales by more than

24   double."[7]

25
26   [6] Ian Bogost, *The E-bike Is a Monstrosity*, The Atlantic (Aug. 22, 2022), available at
     https://www.theatlantic.com/technology/archive/2022/08/ebike-electric-bikes-climate-change-
     exercise/671305/ (last accessed Aug. 30, 2023).

27   [7] https://safer-america.com/how-to-keep-your-kid-or-teen-safe-on-an-e-bike/ (last accessed Aug. 30,
28   2023).

**HAGENS BERMAN**

33.     A study published in 2019 analyzed emergency department data from 2000 to 2017 by the United States Consumer Product Safety Commission's National Electronic Injury Surveillance System (NEISS) and found that people riding e-bikes were more likely to suffer internal injuries and be hospitalized compared to the other riders.[8]

34.     Even in the Netherlands, "one of the safest countries to ride a bicycle due to a preponderance of infrastructure designed to keep riders separated from other vehicle traffic," a recent study found that e-bike riders are 1.6 times more likely than an ordinary bicyclist to end up in the emergency room.[9]

35.     Reports of severe injury and even death are on the rise. The U.S. Consumer Product Safety Commission (CPSC) found a steady 70% rise in injuries on e-scooters, e-bikes, and hoverboards from 2017 to 2020. The commission reported 71 fatalities across the country over that period.[10]

36.     In California, a 36-year-old woman riding an e-bike with two young children died after she crashed and fell onto the rocks in September of 2021.[11] Shortly thereafter, the city of Carlsbad, California declared a state of local emergency for bicycle and e-bike safety based on a 233% increase in accidents since 2019.[12]

---

[8] Vishwadha Chander, *E-bikes show distinct pattern of severe injuries*, Reuters (Dec. 25, 2019), available at https://www.reuters.com/article/us-health-ebike-injuries/e-bikes-show-distinct-pattern-of-severe-injuries-idUSKBN1YT0MV (last accessed Aug. 30, 2023).

[9] https://www.theverge.com/2022/4/13/23023361/e-bike-injuries-increased-risk-netherlands (last accessed Aug. 30, 2023).

[10] https://www.cpsc.gov/Newsroom/News-Releases/2021/Injuries-Using-E-Scooters-E-Bikes-and-Hoverboards-Jump-70-During-the-Past-Four-Years (last accessed Sept. 13, 2023); *See also* Noah Goldberg, *A Pacific Palisades girl died in an electric bike crash. Her parents see greater danger*, The LA Times (Aug. 5, 2022), available at https://www.latimes.com/california/story/2022-08-05/e-bike-crash-death-daughter-manufacturer-to-blame-rad-power-bikes (last accessed May 23, 2023).

[11] https://www.cbsnews.com/losangeles/news/woman-dies-2-children-hurt-in-e-bike-crash-on-san-juan-capistrano-trail/ (last accessed Aug. 30, 2023).

[12] https://www.kusi.com/carlsbad-declares-state-of-emergency-after-233-increase-in-bike-related-accidents/ (last accessed Aug. 30, 2023).

HAGENS BERMAN

1    37.    An emergency department physician interviewed in the aftermath of the

2    California woman's death noted that e-bike injuries are on the rise, and that the injuries riders

3    sustain are similar to those of motorcycle accidents.[13]

4    38.    In Hawaii, despite state-imposed regulations on e-bikes, deadly crashes continue

5    to increase. In December of 2021, a 53-year-old woman died after falling off her e-bike. In

6    February of 2022, two young boys (10-year-old and 12-year-old) were hit by a car while riding

7    an e-bike and left in serious condition. In March 2022, a 13-year-old boy died after veering into

8    oncoming traffic while riding an e-bike.[14]

9    39.    In Utah, two nine-year-old boys were left in critical condition after being hit by an

10   SUV while riding an e-bike in July of 2022.[15]

11   40.    These are examples of the hundreds, if not thousands, of e-bike riders who have

12   been injured by an incredibly dangerous, yet readily accessible product.

13   41.    Rad further compounds an already dangerous product by designing,

14   manufacturing, and selling Defective e-bikes.

15   **B.    Rad Power Bikes Quickly Became the Most Popular e-Bike Manufacturer in the**
     **United States.**

16

17   42.    Established in 2007, the original Rad e-bike was created as a means of

18   transportation for then-teenage founder Mike Radenbaugh to get to high school.[16]

19   43.    By 2019, Rad had headquarters in Seattle, hundreds of employees, and funding

20   amounting to nearly $100 million.[17] Rad now has retail stores in Utrecht, Netherlands,

21   Vancouver, Canada, St. Petersburg, FL, Brooklyn, NY, Seattle, WA, Salt Lake City, UT,

22

23   _____

     [13] *Id*.

24   [14] https://www.khon2.com/local-news/fatal-electric-bike-crash-raises-calls-for-regulations/ (last
     accessed Aug. 30, 2023).

25   [15] https://www.fox13now.com/news/local-news/2-children-riding-bikes-hit-by-suv-in-south-jordan
     (last accessed Aug. 30, 2023).

26   [16] Bradley Berman, *The Teenage Tinkerer Behind an E-Bike Revolution*, The New York Times (Aug.

27   6, 2020), https://www.nytimes.com/2020/08/06/business/electric-ebikes-rad-power-bikes.html (last
     accessed Aug. 30, 2023).

28   [17] *Id*.

**HAGENS BERMAN**

1   Denver, CO, San Diego, CA, Huntington Beach, CA, and Berkley, CA. Rad is considered the

2   industry leader for e-bike sales in North America.

3        44.    In October 2021, Rad announced a massive new funding round of $154 million,

4   bringing the staggering total investment in the company to $329 million since its inception.[18]

5        45.    At the core of it all, Rad sells e-bike models which typically sell for somewhere

6   between $1,000 and $1,500. These bikes have a maximum speed of 20 mph. Rad's website uses

7   the following illustration to show just how fast Rad e-bikes can go: "All of our bikes have a top

8   speed of 20 mph (25 km/h in the EU). To put that into perspective, the average bull in

9   Pamplona's Running of the Bulls hits about 15 mph. We're not saying that you should use our

10  bikes to outrun raging bovines through the streets of Spain, but the important thing is you

11  could."[19]

12       46.    Rad's current e-bike models include: the RadCity ("built for pavement – tackle

13  errands, commute to work, and enjoy the outdoors on our award-winning ebike"); RadRover

14  ("Our flagship fat-tire electric bike comes with a 750-watt motor, throttle, and pedal assist to

15  take you on any adventure; big or small"); RadRunner ("The RadRunner isn't just a passenger

16  utility electric bike – it's a moped-style ebike that feels like a scooter and is sure to give you that

17  Rad grin."); RadExpand ("Our RadExpand electric folding bikes fold in to travel, and fold out

18  for fun. RadExpand folding ebikes feature fat tires, accessory upgrades, and fit a range of rider

19  heights."); RadWagon ("Our RadWagon electric cargo bike carries passengers and gear with

20  ease. Tackle hills and the town with its 350 lb. payload capacity, 750-watt motor, and 5 levels of

21  pedal assist."); and the RadMission ("Affordability meets award-winning in our RadMission,

22  offering a lighter frame, single-speed motor, and the capability to get you where you need to

23  ride.").[20]

24

25       [18] https://electrek.co/2021/10/28/rad-power-bikes-lands-giant-154m-investment-will-begin-north-
26  american-e-bike-production/ (last accessed Aug. 30, 2023).

27       [19] https://www.radpowerbikes.com/blogs/the-scenic-route/what-is-an-ebike (last accessed Aug. 30,
    2023).

28       [20] https://www.radpowerbikes.com/collections/electric-bikes (last accessed Aug. 30, 2023).

CLASS ACTION COMPLAINT - 8
Case No.
011149-11/2186333 V1

**HAGENS BERMAN**

**C.    Rad Bikes are defectively designed because they use disc brakes in conjunction with a quick-release front wheel, a known safety hazard.**

47.    All Rad Bikes are designed with disc brakes and quick release "skewers," or quick release mechanisms on the front tire.[21]

48.    Disc brakes sit at the center of each bike wheel and stop the bike by squeezing a brake pad against a rotor mounted around the hub. Disc brakes are generally considered to be more powerful brakes than traditional rim brakes.



*Disc Brakes*.[22]

49.    Quick release "skewers," or quick release axles, allow you to remove the wheel of your bicycle without the use of a tool.

50.    Quick Release skewers consist of a rod threaded on one end and with a lever operated cam assembly on the other.

---

[21] https://radpowerbikes.zendesk.com/hc/en-us/articles/360004151454-Front-Wheel-Removal-Guide (last accessed Aug. 30, 2023).

[22] https://www.cpsc.gov/Recalls/2015/Thirteen-Manufacturers-Distributors-Recall-Bicycles-with-Front-Disc-Brakes-to-Replace-Quick-Release-Lever (last accessed Aug. 30, 2023).

51.     The rod is inserted into the hollow axle of the wheel, and the lever is closed to tighten the cam and secure the wheel to the fork.

52.     These mechanisms are used to easily transport a bike by taking off the wheels and fitting the bike inside a car or an enclosed space.

53.     Rad's website claims that the quick release wheel "helps make maintenance easier."[23]

54.     Despite the fact that Rad e-bikes are far heavier than manual road bikes (for example, the RadRunner Plus weighs 77 pounds) and thus not likely to be transported in a manner requiring wheels to come off, Rad designs, manufactures, and sells all e-bikes with quick-release skewers.



*Rad's "Front Wheel Removal Guide" features the quick release skewer*.[24]

55.     In 2015, the CPSC issued a recall on "Bicycles equipped with front disc brakes and quick release levers." The hazard was described as "[a]n open quick release lever on the bicycle's front wheel hub can come into contact with the front disc brake rotor causing the front

---

[23] *Supra*, https://radpowerbikes.zendesk.com/hc/en-us/articles/360004151454-Front-Wheel-Removal-Guide.

[24] *Id*.

HAGENS BERMAN

wheel to come to a sudden stop or separate from the bicycle, posing a risk of injury to the rider."[25]



Figure 1.
Quick release lever
open past 180°

Figure 2.
Quick release lever caught
in front disc brake

***Quick release lever and disc brake recall 2015.*[26]**

56.     Since 2015, more than 2.5 million bikes in the U.S. have been included in the recall.

57.     The solution to the 2015 disc-brakes recall, which was generally adopted by the biking industry, required manufactures to provide a replacement quick release skewer with a release lever greater than 180 degrees.[27]

58.     Still, reports of Rad e-bike crashes describe riders flying over the handles in a manner that rings similar to defects and injuries that led to the 2015 disc-brakes recall.

59.     Despite knowing about the longstanding industry-wide consensus that disc brakes in conjunction with quick release skewers are dangerous, Defendants continue to design, manufacture, and sell e-bikes that include this hazardous design.

---

[25] *Supra*, https://www.cpsc.gov/Recalls/2015/Thirteen-Manufacturers-Distributors-Recall-Bicycles-with-Front-Disc-Brakes-to-Replace-Quick-Release-Lever.

[26] https://trek.scene7.com/is/content/TrekBicycleProducts/Asset%20Library/website-support-assets/safet-and-recalls/15TK_QRRecall_WebNotice_USEN.pdf (last accessed Aug. 30, 2023).

[27] https://www.bicycleretailer.com/recalls/2015/04/21/trek-issues-recall-qr-disc-brake-bikes#.Y2l-dHbMKUk (last accessed Aug. 30, 2023).

**HAGENS BERMAN**

60.     Defendants' front fork design also causes front wheels to simply lift off from the bike frame – a separate defect that compounds the problems and safety issues with Rad e-bikes.

61.     Indeed, one article noted that "[f]ront fork failure on an electric bike can be fatal and is one of the biggest concerns for those who are contemplating whether or not to hop on an electric bike."[28]

*62.     "A failed front fork will result in the rider flying over the handlebars headfirst. As you can imagine, this can easily result in a fatal accident or one with plenty of major injuries."*[29]

63.     As a result of Defendants' faulty design, the heavier than usual weight of e-bikes, and the fork design with quick release skewers (the "Defects"), many riders, such as Mr. Mason, have experienced the front wheel flying off the bike while in motion.

64.     Upon information and belief, the Defects result in a hazardous and patently unsafe design. This faulty design means that riders, such as Mr. Mason, are at great risk of their Rad e-bike dismantling while in motion when the front wheel becomes loose.

65.     Plaintiff Mason is not the only Rad rider to experience a catastrophic crash. The internet is rife with similar horror stories of Rad e-bike wheels flying off and causing crashes.

66.     Here are some examples other reported crashes online:

**User "Joseph," May 08, 2022**

"The front skewer snapped on my brand new Rad Expand 5 causing the front wheel to come off making me crash when I was riding down hill today! Before registering for this forum I read that a few others have had this experience! I[]m home hurting after rolling three times, but thankful that I didn[]t break any bones! I will be contacting RAD Power bikes in the morning!"[30]

---

[28] https://bicycle2work.com/are-electric-bikes-dangerous-to-ride/ (last accessed Aug. 30, 2023).

[29] *Id*. (emphasis added).

[30] https://www.radowners.com/index.php?topic=2138.0 (last accessed Aug. 30, 2023).

HAGENS BERMAN

**Reddit User "u/SweetTaterette" posted August 2022**

"Our son's RadRunner e-bike front wheel fell off while he was riding it. He was luckily unharmed but I just saw a LA Times article that mentions another incident of this. Is this common in e-bikes???"[31]

**Reddit User "tsalizz" posted August 2022**

"If you Google "rad power bikes front wheel fell off" there are WAY too many results for this kind of thing. If there's a way to install the quick release correctly so this doesn't happen, it's obviously way too easy to do it incorrectly compared to other bikes. There's too many bikes out there with quick releases that don't have any kind of issues. Something is up here."[32]

**User "megsallans" posted July 23, 2021**

"Has anyone else had this happen? I was riding my RadRunner Plus yesterday (I've owned it since June and have about 200 miles on it) and I was coming down a hill, no power being used, and my tire literally just fell off! I've sustained multiple injuries and broke my helmet, as the impact was so hard. I'm not sure if this is a manufacturing issue or an assembly issue? My brother, who is in the ebike business, encouraged me to get ALEOED 2 pcs bicycle hub safety washers, but if I need these why does the bike not come with them? Hoping to get some answers, as now I'm scared that this will happen again."[33]

**User "DocMartin" posted October 07, 2021**

"This happened to me recently. I was riding downhill on a paved street and a dip in the road caused the front fork to lift right off the wheel. I'm still in recovery after suffering broken bones in my right foot and a lacerated heel. I had to have screws and a plate installed in my foot and still can't walk over two months later. The hard fork is not safe without some kind of safety mechanism on the quick release. I contacted Rad Power Bikes to order a front suspension fork from the Rad Runner Plus but they told me it's not compatible with the Rad Runner. I'm not sure why it wouldn't be compatible based on the photos."[34]

---

[31] https://www.reddit.com/r/ebikes/comments/wij8ad/our_sons_radrunner_ebike_front_wheel_fell_off/ (last accessed Aug. 30, 2023).

[32] https://www.reddit.com/r/ebikes/comments/wij8ad/comment/ijbyfck/?utm_source=reddit&utm_medium=web2x&context=3 (last accessed Aug. 30, 2023).

[33] https://www.radowners.com/index.php?topic=1195.0 (last accessed Aug. 30, 2023).

[34] *Id.*

HAGENS BERMAN

**User "woodyferrell" posted May 1, 2022**

"I have a RadCity 5 Plus. I noticed today when riding down hill the bike started to wobble. I checked all the wheels nuts and all were tight. When I get off the bike and shake the bike from left to right vigorously it seems very loose. Any theories or comments?"[35]

**User "Dlennard" posted on October 9, 2022**

"Hi all, I've just taken delivery of my radcity 5 plus step through. At slow speed I definitely have a shimmy through the entire bike. The headset and stem are tight as is the front axle. Tyre pressures front and rear about 60. I have a front rack and a yep child seat on the rack. If I hold the front wheel between my knees and slightly shake the bars while facing the bike I do get a resonant wobble through the entire bike. Likewise at low speeds below 5 mph I get a wobble which means slow speed handling becomes very dangerous. I'm beginning to think that this is the bike geometry and construction at fault."[36]

67.     Each of these incidents is a mere snapshot of the increasingly dangerous rise of Rad e-bikes. Unbeknownst to the average consumer, Rad has placed inherently deficient and dangerous products into the stream of commerce.

**D.     Despite knowing the dangerous nature of e-bikes and Rad's Defective e-bike designs, Rad continuously markets its Defective e-bikes as a safe, family-friendly mode of transportation.**

68.     Most alarming of all, Rad continues to market Defective e-bikes as safe, family-friendly transportation.

69.     Rad goes so far as to advertise Defective e-bikes with children on the back, encouraging parents to use dangerous and Defective e-bikes with their children riding as passengers.

---

[35] https://www.radowners.com/index.php?topic=2106.0 (last accessed May 23, 2023).

[36] *Id.*

**HAGENS BERMAN**

1
2
3
4
5
6
7
8
9
10
11



*Rad's website advertising Defective e-bikes with child passengers.*[37]

12
13
14
15
16
17
18
19
20



*Rad's website advertising Defective e-bikes with child passengers.*[38]

21      70.      Rad knowingly designs, manufactures, and sells dangerous and defective e-bikes

22   that are used by children and adolescents. Indeed, Rad e-bikes were created by a teenager for the

23   purpose of transportation to high school.

24
25

26      [37] Available at https://www.radpowerbikes.com/collections/radrunner-electric-utility-bikes/products/radrunner-electric-utility-bike (last accessed Aug. 30, 2023).

27      [38] Available at https://press.radpowerbikes.com/archive/press_releases/?page=2 (last accessed Aug. 30, 2023).

28

HAGENS BERMAN

71.     Rad knowingly designs, manufactures, and sells its Defective e-bikes, the danger of which is compounded when used by children and adolescent riders or when carrying young passengers.

72.     While Rad's website includes a disclaimer ("You must be 16 or older to operate a Rad Power Bikes ebike"), it also depicts young children riding its e-bikes, and acknowledges that "Children under the age of 16 may lack the necessary judgment and skill to safely operate the ebike."[39]

73.     For example, the below post authored by Rad advertises a parent and two children as passengers, while noting that "[a]s Class 2 ebikes, Rad Power Bikes are engineered to not only perform well up to the 20 mph (the speed that the bike's motor shuts off), ***but also accommodate additional speed that occurs when traveling downhill***."[40]



**About That Need for Speed**

As Class 2 ebikes, Rad Power Bikes are engineered to not only perform well up to the 20 mph (the speed that the bike's motor shuts off), but also accommodate additional speed that occurs when traveling downhill. However, some ebike brands are focusing on Class 3.

---

[39] https://www.radpowerbikes.com/blogs/the-scenic-route/what-is-an-ebike (last accessed Aug. 30, 2023).

[40] Available at https://www.radpowerbikes.com/blogs/the-scenic-route/what-is-a-class-2-electric-bike-we-explain-ebike-class-differences (last accessed Aug. 30, 2023) (emphasis added).

HAGENS BERMAN

Rad even goes so far as to advertise "the Rad Family Life" on their website.[41]





[41] Available at https://www.radpowerbikes.com/blogs/the-scenic-route/rad-family-ebike-life (last accessed Aug. 30, 2023).

CLASS ACTION COMPLAINT - 17
Case No.
011149-11/2186333 V1

**HAGENS BERMAN**

74.     A recent post on e-bike safety and children posted by the Children's Hospital of Orange County (CHOC) notes that "[i]t's important to remember that just because there are no current age restrictions for class one and class two e-bikes, it doesn't mean that e-bikes are appropriate for children of all ages."[42]

75.     The post further notes that "[m]ost of the patients treated at CHOC for e-bike injuries were between the ages of 14 and 16 years. However, ***CHOC has also treated children as young as 2 years for injuries caused by riding on an e-bike with an adult*** […]."[43]

76.     Providence Mission Hospital Mission Viejo, a hospital in California, reported in December of 2021 that their hospital had seen a major increase in the number of kids who ended up in the emergency room after riding an e-bike. At the end of 2021, there had been at least 38 kids, up from six kids in 2020.[44]

77.     As Rad is well aware, the company has recently received increased scrutiny following the death of Molly Steinsapir, a 12-year-old girl who was riding a Rad e-bike with her friend when the bike began wobbling uncontrollably.[45]

78.     Specifically, the two girls started down a hill while riding tandem on a RadRunner e-bike when the bike began to shake and wobble, causing the bike to crash. The two girls were thrown from the bike to the hard concrete road. Molly was knocked unconscious and spent two weeks fighting for her life at UCLA medical center before passing away.[46]

79.     Molly's parents filed a wrongful death suit, further claiming that Rad's dangerous e-bikes are defective and lead to Molly's tragic passing.[47]

---

[42] https://health.choc.org/are-electric-bikes-e-bikes-safe-for-kids-how-to-prevent-injuries/ (last accessed Aug. 30, 2023).

[43] *Id.*

[44] https://spectrumnews1.com/ca/la-west/public-safety/2021/12/16/oc-hospital-says-e-bike-related-er-visits-have-increased (last accessed Aug. 30, 2023).

[45] https://www.nytimes.com/2022/08/01/style/team-molly-rad-power-bikes-lawsuit.html?smid=url-share (last accessed Aug. 30, 2023).

[46] *Id.*

[47] https://unicourt.com/case/ca-la23-kaye-steinsapir-an-individual-and-successor-in-interest-to-decedent-molly-steinsapir-et-al-vs-rad-power-bikes-inc-a-delaware-corporation-et-al-884050 (last accessed Aug. 30, 2023).

CLASS ACTION COMPLAINT - 18
Case No.
011149-11/2186333 V1

**HAGENS BERMAN**

80.     Rad continues to ignore the issue by refusing to issue a recall or provide a global fix. Unfortunately, it is only a matter of time until another child is seriously injured or even killed as a result of Defendants' Defective e-bikes.

81.     Rad has actual knowledge that their Defective e-bikes put their riders and passengers, including children, at increased risk of serious accident, and even death. Still, Rad continues to market and advertise their Defective e-bikes as safe for kids and families.

## V.     TOLLING OF STATUTES OF LIMITATIONS

82.     Any applicable statute(s) of limitations have been tolled by Rad's knowing and active concealment and denial of the facts alleged herein. Plaintiff and the members of the Class could not have reasonably discovered the true nature of the Defective e-bikes because Defendants concealed it. Plaintiff's claims were thus tolled pursuant to the discovery rule, for fraudulent concealment, and for estoppel.

## A.     Discovery Rule

83.     The causes of action alleged herein did not accrue until Plaintiff and Class members discovered that their e-bikes had a widespread defect.

84.     As alleged above, Class members had no way of knowing about the Defective e-bikes. Defendants concealed their knowledge of the Defective e-bikes while they continued to market and sell the Defective e-bikes as safe, high-quality, and reliable e-bikes. To this day, Rad fails to disclose the full extent of the Defect.

85.     Within any applicable statutes of limitation, Class members could not have discovered through the exercise of reasonable diligence that Defendants were concealing the conduct complained of herein and misrepresenting the true qualities of the Defective e-bikes. Class members acted reasonably and diligently in attempting to find the source of the Defect.

86.     Until the Defect manifested, Class members did not know facts that would have caused a reasonable person to suspect that there was a Defect affecting their e-bikes and an ordinary person would be unable to appreciate that the e-bike was defective. Indeed, Rad has refused to issue a recall or provide a global fix.

**HAGENS BERMAN**

87.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to the claims in this litigation.

**B.     Fraudulent Concealment**

88.     As the manufacturers, distributors, sellers, and/or warrantors of the Defective e-bikes, Rad was under a continuous duty to disclose to Class members the existence of the Defect found in the Defective e-bikes.

89.     Rad was and remains under a continuing duty to disclose to Plaintiff and the members of the Class the true character, quality, and nature of the Defective e-bikes.

90.     Rad recklessly disregarded the true nature, quality, and character of the Defective e-bikes, by failing to fully disclose the existence of the Defect or recall Defective e-bikes.

91.     Due to Defendants' concealment throughout the time period relevant to this action, all applicable statutes of limitation have been tolled.

92.     Instead of publicly disclosing the Defect in the Defective e-bikes, Defendants kept owners in the dark about the Defect present in the Defective e-bikes, which creates unreasonable safety risks to e-bike users. To this day, Defendants have knowingly or recklessly failed to disclose the full extent of the Defect and have failed to offer adequate remedies for the Defect.

93.     Absent manifestation of the Defect, Class members were not at fault for failing to discover the existence of the Defect present in their Defective e-bikes.

94.     Until the Defect manifested in his Defective e-bike, Plaintiff had no actual or presumptive knowledge of facts sufficient to put them on inquiry notice of the existence of the Defect.

**C.     Estoppel**

95.     Rad was, and is, under a continuous duty to disclose to Plaintiff and Class members the true character, quality, and nature of the Defective e-bikes.

96.     Rad failed to disclose the existence of the Defect and actively concealed the true character, quality, and nature of the Defective e-bikes while knowingly making representations about the safety, quality, and reliability of the Defective e-bikes. Plaintiff and Class members reasonably relied upon Rad's knowing and affirmative representations and/or active concealment

HAGENS BERMAN

of these facts. Based on the foregoing, Rad is estopped from relying on any statutes of limitation in defense of this action.

## VI.   WASHINGTON LAW APPLIES TO NATIONWIDE CLAIMS

97.     It is appropriate to apply Washington law to the nationwide claims because Washington's interest in this litigation exceeds that of any other state.

98.     Defendants are headquartered in Seattle, Washington and are the primary entities in the United States responsible for distributing, selling, leasing, and warranting Defective e-bikes.

99.     Defendants maintain their customer relations, engineering, marketing, and warranty departments at their corporate headquarters in this judicial district. Defendants' customer relations department is responsible for fielding customer complaints and monitoring customer complaints posted to their respective websites or third-party websites.

100.     Defendants' warranty and engineering departments are both responsible for the decisions to conceal the Defect from Class members.

101.     Based on the foregoing, such policies, practices, acts, and omissions giving rise to this action were developed in, and emanated from, Defendants' headquarters in this judicial district.

102.     As detailed above, Defendants knew or should have known about the Defect through the activities of their divisions and affiliated entities located within Washington. Accordingly, the state of Washington has the most significant relationship to this litigation and its law should govern.

## VII.   CLASS ALLEGATIONS

103.     Plaintiff brings this action on his own behalf, and on behalf of a nationwide class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3).

104.     All persons or entities in the United States who purchased or own an e-bike manufactured by Rad Power Bikes Inc. or Rad Power Bikes, LLC with disc brakes and/or a quick release axle mechanism on the front wheel (the "Nationwide Class").

105.     The Nationwide Class is referred to herein as "the Class."

**HAGENS BERMAN**

106.   Excluded from the Class are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the Rad e-bikes for resale, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change, or expand the Class definitions based on discovery and further investigation.

107.   <u>Numerosity</u>: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that at least hundreds of thousands of Rad e-bikes have been sold in the United States.

108.   <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a.   Whether Defendants engaged in the conduct alleged herein;

b.   Whether Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Defective e-bikes into the stream of commerce in the United States;

c.   Whether the Rad e-bikes were sold with the safety defects;

d.   Whether Defendants knew of the Defective e-bike problems but failed to disclose the problems and their consequences to their customers;

e.   When Defendants discovered the defects in the Rad e-bikes, and what, if anything, they did in response;

f.   Whether Defendants should be required to disclose the existence of the Defective e-bike design;

g.   Whether Defendants are strictly liable for manufacturing defective e-bikes and whether their actions violate express and implied warranties;

h.   Whether Plaintiff and Class members overpaid for their Rad e-bikes; and

i.   Whether Plaintiff and Class members experienced out-of-pocket losses as a result of the Defective e-bikes, and if so, how much.

109. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a Rad e-bike with the same defects as did each member of the Class. Furthermore, Plaintiff and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendants' wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class members.

110. <u>Adequacy</u>: Plaintiff is an adequate representative because his interests do not conflict with the interests of the Class that he seeks to represent, he has retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and their counsel.

111. <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendants' sales records.

112. Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

HAGENS BERMAN

# VIII.   CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### STRICT LIABILITY – WASHINGTON PRODUCTS LIABILITY ACT
### (RCW 7.72.030(2)(a))
### *On Behalf of the Nationwide Class*

113.    Plaintiff realleges and incorporates by reference all preceding allegations as though set forth fully herein.

114.    Plaintiff brings this claim on behalf of himself and the Nationwide Class under the laws of Washington, where Defendants designed and manufactured Defective e-bikes.

115.    Defendants are each a "manufacturer" and "product seller" as defined by RCW 7.72.010.

116.    At all material times, Defendants were in the business of designing, manufacturing, selling, and marketing the Defective e-bike that injured Plaintiff. Rad's e-bikes are defective and/or unreasonably dangerous under RCW 7.72.030, and such defects in the design, manufacturing, and sales were a proximate and producing cause of the injuries sustained by Plaintiff.

117.    The Defective e-bikes and their components were not reasonably safe in construction because when they left Defendants' control, they deviated in some material way from the manufacturing design specifications or performance standards.

118.    At all times material herein, and at the time the Defective e-bikes were placed into the stream of commerce, Defendants knew, or should have known, that Defective e-bikes were to be purchased and/or rented or used without inspection for defects by members of the general public such as children.

119.    At all times material herein, and at the time the Defective e-bikes were placed into the stream of commerce, the Defective e-bikes were unsafe to an extent beyond that which would be contemplated by the ordinary consumer.

120.    At all times material herein, the e-bikes left the possession of Defendants, who knew they were unsafe for their intended and foreseeable use because of defects in the manufacture, design, assembly, testing, inspection, packaging, labeling, fabrication, construction,

HAGENS BERMAN

1  analysis, instruction, distribution, supply, servicing, merchandising, recommendation,

2  advertising, promotion, marketing, sale, and rent so that they could not safely serve their

3  intended or expected purpose, but would instead expose the rider or passenger to serious injury.

4  Such defects and hazards of the Defective e-bikes include, but are not limited to the following:

5          a.     The Rad e-bikes were defectively designed and manufactured to include

6                disc brakes and a quick release skewer on the front wheel;

7          b.     The Rad e-bikes were advertised, promoted, and/or marketed toward children despite knowing that minor riders lacked judgment and skill to

8                safely operate the e-bike; and

9          c.     The Rad e-bikes were promoted, and/or marketed for use by riders and passengers on the rear seat, including for children as rear seat passengers,

10                while the rear seat was unsafe for use by passengers including children.

11      121.    All Rad e-bikes are defective and/or unreasonably dangerous and were the

12  producing and proximate cause for the injuries sustained by Plaintiff and the Class.

13      122.    On information and belief, all Defective e-bikes were designed, manufactured,

14  marketed, assembled, distributed, sold, supplied and/or placed into the stream of the commerce

15  by Defendants.

16      123.    Because of the Defective e-bikes, Plaintiff has sustained injuries and medical

17  expenses. He has also experienced pain and suffering and serious emotional distress.

18  **SECOND CAUSE OF ACTION**

19  **BREACH OF IMPLIED WARRANTY – WASHINGTON PRODUCTS LIABILITY ACT**
**(RCW 7.72.030(2)(c))**

20  ***On Behalf of the Nationwide Class***

21      124.    Plaintiff incorporates by reference each preceding and succeeding paragraph as

22  though fully set forth at length herein.

23      125.    Plaintiff brings this claim on behalf of himself and the Nationwide Class under

24  the laws of Washington, where Defendants designed and manufactured Defective e-bikes.

25      126.    Defendants are "manufacturers" and "product sellers" as defined by RCW

26  7.72.010.

27

28

1    127.    A warranty that the Defective e-bikes were in merchantable condition was

2    implied by law, and the Defective e-bikes were bought and sold subject to an implied warranty

3    of merchantability.

4    128.    By placing the Defective e-bikes in the stream of commerce, Defendants

5    impliedly warranted that the Defective e-bikes are safe, and that all claims in their advertising

6    and marketing of the Defective e-bikes were true.

7    129.    The Defective e-bikes did not comply with the implied warranty of

8    merchantability because, at the time of sale or lease and at all times thereafter, the Defective e-

9    bikes were defective and not in merchantable condition, would not pass without objection in the

10   trade, and were not fit for the ordinary purpose for which e-bikes were used. Specifically, the

11   Defective e-bikes suffer from various design defects which cause the Defective e-bikes to make

12   sudden, unsafe stops that can result in a person flying over the handlebars or falling as the front

13   wheel releases from the bike.

14   130.    Plaintiff and Class members suffered injuries due to the defective nature of the

15   Defective e-bikes and Defendants' breach of the warranty of merchantability.

16   131.    At all times that Defendants warranted and sold the Defective e-bikes, they knew

17   or should have known that their warranties were false, and yet they did not disclose the truth, or

18   stop manufacturing or selling the Defective e-bikes, and instead continued to issue false

19   warranties and insist the products were safe. The Defective e-bikes were defective when

20   Defendants delivered them directly to customers.

21   132.    Plaintiff's and Class members' acquisition of the Defective e-bikes directly from

22   Defendants suffices to create privity of contract between Plaintiff and all other members of the

23   Class.

24   133.    Defendants each had notice of their breach as alleged herein.

25   134.    As a direct and proximate result of Rad Power Bikes, Inc. and Rad Power Bikes,

26   LLC's breach of implied warranties of merchantability, Plaintiff and the other Class members are

27   entitled to damages in an amount to be determined at trial.

28

**HAGENS BERMAN**

**THIRD CAUSE OF ACTION**

**VIOLATION OF THE *MAGNUSON*-MOSS WARRANTY ACT**
**(15 U.S.C. § 2301, *et seq*.)**
***On behalf of the Nationwide Class***

135.    Plaintiff realleges and incorporates by reference all preceding allegations as though set forth herein.

136.    Plaintiff brings this claim individually and on behalf of the other members of the Nationwide Class.

137.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332(a)-(d).

138.    The Defective e-bikes are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). Plaintiff and Nationwide Class members are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranties.

139.    Each Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

140.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

141.    Defendants provided Plaintiff and Nationwide Class members with an implied warranty of merchantability in connection with the purchase of their Defective e-bike that is a "written warranty" and/or "implied warranty" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the written and/or implied warranty of merchantability, Defendants warranted that the Defective e-bikes were fit for their ordinary purpose and would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

142.    Defendants breached their implied warranties, as described herein, and are therefore liable to Plaintiff under 15 U.S.C. § 2310(d)(1). Without limitation, the Defective e-bikes share a common defect in that they are all equipped with a disc brakes, quick release mechanisms, and improper front fork design that can cause dangerous braking, crashes, or

HAGENS BERMAN

1   release of the front wheel while in motion. The Defect rendered the Defective e-bikes

2   unmerchantable and unfit for their ordinary use when they were sold, and at all times thereafter.

3   143.   As discussed herein, on information and belief, Defendants knew or should have

4   known about the Defect based on, *inter alia*, warranty claims and customer service complaints.

5   Defendants omitted information about the Defect and its consequences from Plaintiff and Class

6   members, misrepresented the qualities of the Defective e-bike, and have failed to provide a *bona*

7   *fide* remedy for the Defect.

8   144.   Any effort by Defendants to limit the implied warranties in a manner that would

9   exclude coverage of the Defective e-bikes is unconscionable, and any such effort to disclaim or

10   otherwise limit such liability is null and void.

11   145.   Any limitations Defendants might seek to impose on their warranties are

12   substantively and procedurally unconscionable. Defendants knew or should have known that the

13   Defective e-bikes were defective and that the Defective e-bikes could fail, causing the Defective

14   e-bikes to make sudden, unsafe stops resulting in a crash when used as intended, long before

15   Plaintiff and Class members knew or should have known. Defendants failed to disclose this

16   Defect to Plaintiff and Class members. Thus, enforcement of the durational limitations on the

17   warranties is harsh and would shock the conscience.

18   146.   Plaintiff and Class members have privity of contract with Defendants through

19   their purchase of Defective e-bikes directly from Defendants' website and through express

20   written warranties that Defendants issued to their customers. Defendants' warranties

21   accompanied the Defective e-bikes and were intended to benefit the ultimate consumers of the

22   Defective e-bikes.

23   147.   Under 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and is not

24   required to give Defendants notice and an opportunity to cure until such time as the Court

25   determines the representative capacity of Plaintiff under Rule 23 of the Federal Rules of Civil

26   Procedure.

27   148.   Under the circumstances described in the complaint, it would be unnecessary and

28   futile to afford Defendants a reasonable opportunity to cure their breach of warranties.

**HAGENS BERMAN**

1  Defendants have known for years that the Defect was present yet continued to misrepresent or

2  omit crucial information about the danger of the Defect.

3      149.    The amount in controversy of Plaintiff's individual claims meets or exceeds the

4  sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of

5  interest and costs, computed based on all claims to be determined in this lawsuit. Plaintiff,

6  individually and on behalf of all other Nationwide Class members, seeks all damages permitted

7  by law, in an amount to be proven at trial. In addition, under 15 U.S.C. § 2310(d)(2), Plaintiff is

8  entitled to recover a sum equal to the aggregate amount of costs and expenses (including

9  attorneys' fees based on actual time expended) determined by the Court to have reasonably been

10  incurred by Plaintiff and Nationwide Class members in connection with the commencement and

11  prosecution of this action.

12      150.    Plaintiff also seeks the establishment of a Defendants-funded program for

13  Plaintiff and Nationwide Class members to recover out-of-pocket costs incurred in attempting to

14  rectify and mitigate the effects of the Defect in their Defective e-bikes.

15                      **FOURTH CAUSE OF ACTION**

16      **VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT**
                        **(RCW 19.86.010, *et seq.*)**
17                  ***On Behalf of the Nationwide Class***

18      151.    Plaintiff incorporates by reference each preceding and succeeding paragraph as

19  though fully set forth at length herein.

20      152.    Plaintiff brings this claim on behalf of himself and the Nationwide Class under

21  the laws of Washington, where Defendants designed and manufactured Defective e-bikes.

22      153.    Rad is a "person" within the meaning of RCW 19.86.010(2) and conducts "trade"

23  and "commerce" within the meaning of RCW 19.86.010(2), .117. The conduct described in this

24  complaint constitutes unfair and deceptive acts or practices in violation of the Washington

25  Consumer Protection Act.

26      154.    Rad engaged in unfair and deceptive acts or practices by engaging in a pattern and

27  practice of: (i) failing to disclose that Rad e-bikes were not of a particular standard, quality, or

28  grade; (ii) failing to disclose, at and after the time of purchase, any and all known material

CLASS ACTION COMPLAINT - 29
Case No.
011149-11/2186333 V1

**HAGENS BERMAN**

defects or material nonconformity of the Defective e-bikes; (iii) failing to disclose at the time of purchase that the Defective e-bikes were not fit for their intended purpose; (iv) failing to give adequate warnings and notices regarding the use, defects, and problems with the Defective e-bikes, even though Rad possessed prior knowledge of the inherent defects; (v) failing to disclose, either through warnings or recall notices, and actively concealed the fact problems with the Defective e-bikes; (vi) causing Plaintiff and members of the Class to expend sums of money at its dealerships to repair and/or replace the Defective e-bikes; and (vii) causing Plaintiff and members of the Class to be seriously physically harmed when the Defective e-bikes caused unwarranted malfunctions.

155.    Rad's systematic practice of failing to disclose the problems with its Defective e-bikes and failing to remedy the Defective e-bike through design or manufacturing change are unfair because these acts or practices offend public policy as it has been established by statutes, regulations, the common law or otherwise, including, but not limited to, the public policy established by RCW 19.230.005.

156.    Rad's systematic practice of failing to disclose the problems with its Defective e-bikes, failing to give adequate warnings regarding the problems with its Defective e-bikes, failing to remedy the Defective e-bike through design or manufacturing change are unfair because these acts or practices: (1) cause substantial financial injury to Plaintiff and the Class; (2) are not outweighed by any countervailing benefits to consumers or competitors; and (3) are not reasonably avoidable by consumers.

157.    Rad's unfair and deceptive conduct was likely to deceive consumers into purchasing the Defective e-bikes, and to deceive riding them under the pretense of safety and reliability.

158.    As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and the Class have been injured in that they have purchased Defective e-bikes that are not safe or reliable, and instead put them and their passengers at grave risk of serious injury. Plaintiff and Class members would not have purchased the Defective e-bikes had they known about the Defect.

**HAGENS BERMAN**

159.    Defendants' unfair or deceptive acts or practices have occurred through trade or business and affect the public interest because they were and are capable of deceiving a substantial portion of the public and expose the public to safety hazards. Defendants' conduct is ongoing and has a substantial likelihood of being repeated. There is a likelihood Defendants' conduct will injure other members of the public.

160.    These acts and practices also offend the public policy laid out in RCW 46.70.005, RCW 46.70.101, and RCW 46.70.180, and that statute specifically provides: "Any violation of this chapter is deemed to affect the public interest and constitutes a violation of chapter 19.86 RCW" in RCW 46.70.310.

161.    Pursuant to RCW 19.86.090, Plaintiff and the Class seek an order enjoining Rad's unfair and deceptive acts or practices, damages, treble damages, attorneys' fees, and any other proper and just relief under the Washington Consumer Protection Act.

## FIFTH CAUSE OF ACTION

### UNJUST ENRICHMENT
### *On Behalf of the Nationwide Class*

162.    Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

163.    Plaintiff brings this claim on behalf of himself and the Nationwide Class under the common law of unjust enrichment, which is materially uniform in all states. In the alternative, Plaintiff brings this claim on behalf of the Nationwide Class under the laws of each state in which Plaintiff and Class members purchased Defective e-bikes.

164.    Defendants designed, manufactured, produced, distributed, marketed, and/or sold Defective e-bikes during the relevant period herein.

165.    Plaintiff and members of the Class conferred non-gratuitous benefits upon Defendants, without knowledge that Defendants' e-bikes contained numerous defects.

166.    Defendants appreciated, or had knowledge of, the non-gratuitous benefits conferred upon them by Plaintiff and members of the Class.

167.    Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class, with full knowledge and awareness that, as a result of Defendants' unconscionable wrongdoing, Plaintiff and members of the Class were not receiving products of high quality, nature, fitness, or value that had been represented by Defendants and reasonable consumers would have expected.

168.    Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiff and members of the Class under these circumstances made Defendants' retention of the non-gratuitous benefits unjust and inequitable.

169.    Because Defendants' retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and members of the Class are entitled to, and hereby seek, disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits in a manner established by the Court.

170.    At all times relevant hereto, Defendants designed, manufactured, produced, marketed, and/or sold Defective e-bikes.

171.    Plaintiff and members of the Class conferred non-gratuitous benefits upon Defendants, without knowledge that the Defective e-bikes contained dangerous safety defects.

172.    Defendants appreciated, or had knowledge of, the non-gratuitous benefits conferred upon them by Plaintiff and members of the Class.

173.    Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class, with full knowledge and awareness that, as a result of Defendants' unconscionable wrongdoing, Plaintiff and members of the Class were not receiving product of high quality, nature, fitness or value that had been represented by Defendants and reasonable consumers would have expected.

174.    Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiff and members of the Class under these circumstances made Defendants' retention of the non-gratuitous benefits unjust and inequitable.

175.    Because Defendants' retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and members of the Class

HAGENS BERMAN

1   are entitled to, and hereby seek disgorgement and restitution of Defendants' wrongful profits,

2   revenue, and benefits in a manner established by the Court.

3                               **SIXTH CAUSE OF ACTION**

4   **ALTERNATIVE COUNT FOR COMMON LAW STRICT PRODUCT LIABILITY**
    *On Behalf of the Nationwide Class*

5

6        176.    Plaintiff realleges and incorporates by reference all preceding allegations as

    though set forth fully herein.

7

8        177.    Plaintiff brings this alternative cause of action on behalf of the Nationwide Class

9   under the laws of each state in which Plaintiff and Class members purchased Defective e-bikes.

10       178.    At all times material herein, the Defendants were in the business of designing,

11  manufacturing, selling, and marketing the e-bike that injured Plaintiff. Rad's Defective e-bikes

12  are defective and/or unreasonably dangerous as those terms are defined by law, and such defects

    in the design, manufacturing, and sales were a proximate and producing cause of the injuries

13

14  sustained by Plaintiff.

15       179.    At all times material herein, and at the time the Defective e-bikes were placed into

16  the stream of commerce, Defendants knew, or should have known, that the Defective e-bikes

17  were to be purchased and/or rented or used without inspection for defects by members of the

    general public such as children.

18

19       180.    At all times material herein, the e-bikes left the possession of Defendants, who

20  knew they were unsafe for their intended and foreseeable use because of defects in the

    manufacture, design, assembly, testing, inspection, packaging, labeling, fabrication, construction,

21

22  analysis, instruction, distribution, supply, servicing, merchandising, recommendation,

23  advertising, promotion, marketing, sale, and rent so that they could not safely serve their

24  intended or expected purpose, but would instead expose the rider or passenger to serious injury.

    Such defects and hazards of the Defective e-bikes include, but are not limited to the following:

25

26            a.      The Defective e-bikes were defectively designed and manufactured to
                      include disc brakes and a quick release skewer on the front wheel;

27

28

**HAGENS BERMAN**

b.   The Defective e-bikes were advertised, promoted, and/or marketed toward children despite knowing that minor riders lacked judgment and skill to safely operate the e-bike; and

c.   The Defective e-bikes were promoted, and/or marketed for use by riders and passengers on the rear seat, including for children as rear seat passengers, while the rear seat was unsafe for use by passengers including children.

181.   All Rad e-bikes were defective and/or unreasonably dangerous and were the producing and proximate cause for the injuries sustained by Plaintiff. On information and belief, all Defective e-bikes were designed, manufactured, marketed, assembled, distributed, sold, supplied and/or placed into the stream of the commerce by Defendants. Defendants also failed to adequately warn Plaintiff or consumers of the clear dangers involved.

182.   Because of the Defective e-bikes, Plaintiff has sustained injuries and medical expenses. He has also experienced pain and suffering and serious emotional distress.

## SEVENTH CAUSE OF ACTION

### ALTERNATIVE COUNT FOR BREACH OF IMPLIED WARRANTY
*On behalf of the Nationwide Class*

183.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

184.   Plaintiff brings this alternative cause of action on behalf of the Nationwide Class under the laws of each state in which Plaintiff and Class members purchased Defective e-bikes.

185.   A warranty that the Defective e-bikes were in merchantable condition was implied by law, and the Defective e-bikes were bought and sold subject to an implied warranty of merchantability.

186.   By placing the Defective e-bikes in the stream of commerce, Defendants impliedly warranted that the Defective e-bikes are safe, and that all claims in their advertising and marketing of the Defective e-bikes were true.

187.   The Defective e-bikes did not comply with the implied warranty of merchantability because, at the time of sale or lease and at all times thereafter, the Defective e-bikes were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which e-bikes were used. Specifically, the

**HAGENS BERMAN**

Defective e-bikes suffer from various design defects which cause the Defective e-bikes to make sudden, unsafe stops that can result in a person flying over the handlebars or falling as the front wheel releases from the bike.

188.   Plaintiff and Class members suffered injuries due to the defective nature of the Defective e-bikes and Defendants' breach of the warranty of merchantability.

189.   At all times that Defendants warranted and sold the Defective e-bikes, they knew or should have known that their warranties were false, and yet they did not disclose the truth, or stop manufacturing or selling the Defective e-bikes, and instead continued to issue false warranties, and continued to insist the products were safe. The Defective e-bikes were defective when Defendants delivered them direct to customers.

190.   Plaintiff's and Class members' acquisition of the Defective e-bikes directly from Defendants suffices to create privity of contract between Plaintiff and all other members of the Class.

191.   Defendants each had notice of their breach as alleged herein.

192.   As a direct and proximate result of Rad Power Bikes, Inc. and Rad Power Bikes, LLC's breach of implied warranties of merchantability, Plaintiff and the other Class members are entitled to damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

### ALTERNATIVE COUNT FOR VIOLATION OF STATE CONSUMER PROTECTION ACTS
*On Behalf of the Nationwide Class*

193.   Plaintiff realleges and incorporates by reference all preceding allegations as though set forth fully herein.

194.   Plaintiff brings this alternative cause of action on behalf of himself and on behalf of all similarly situated residents of each of the 50 states for violations of the state consumer protection acts including:

      a.   the Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq*.;

      b.   the Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1521, *et seq*.;

c.    the Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

d.    the California Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.* and 17500, *et seq.*;

e.    the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*;

f.    the Colorado Consumer Protection Act, Colo. Rev. Stat. Ann. § 6-1-101, *et seq.*;

g.    the Connecticut Unfair Trade Practices Act, Conn. Gen Stat. Ann. § 42- 110, *et seq.*;

h.    the Delaware Consumer Fraud Act, Del. Code Ann tit. 6, § 2511, *et seq.*;

i.    the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq.*;

j.    the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

k.    the Georgia Fair Business Practices Act, Ga. Code Ann. § 10-1-390, *et seq.*;

l.    the Hawaii Unfair Competition Law, Haw. Rev. Stat. § 480-2, *et seq.*;

m.    the Idaho Consumer Protection Act, Idaho Code. Ann. § 48-601, *et seq.*;

n.    the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1, *et seq.*;

o.    the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-2, *et seq.*;

p.    the Kansas Consumer Protection Act, Kan. Stat. Ann. § 50-623, *et seq.*;

q.    the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*;

r.    the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq.*;

s.    the Maine Unfair Trade Practices Act, Me. Stat. tit. 5, § 207;

t.    the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-501, *et seq.*;

u.    the Massachusetts Regulation of Business Practices for Consumers Protection Act, Mass. Gen Laws Ann. Ch. 93A, *et seq.*;

**HAGENS BERMAN**

v.   the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.*;

w.   the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F, *et seq.*;

x.   the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407, *et seq.*;

y.   the Nebraska Consumer Protection Act, Neb. Rev. St. §§ 59-1601, *et seq.*;

z.   the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 41.600, *et seq.*

aa.  the New Hampshire Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1;

bb.  the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8, *et seq.*;

cc.  the New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*;

dd.  the New York Consumer Protection from Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349, *et seq.*;

ee.  the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1;

ff.  the North Dakota Consumer Fraud Act, N.D. Cent. Code § 51-15-01, *et seq.*;

gg.  the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.*;

hh.  the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 § 751, *et seq.*;

ii.  the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, *et seq.*;

jj.  the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*;

kk.  the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-5.2(B), *et seq.*;

ll.  the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5- 10, *et seq.*;

mm. the South Dakota Deceptive Trade Practices and Consumer Protection, S.D. Codified Laws § 37-24-1, *et seq.*;

nn.  the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq.*;

**HAGENS BERMAN**

oo.   the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.*;

pp.   the Utah Consumer Sales Practices Act, Utah Code. Ann. § 13-11-175, *et seq.*;

qq.   the Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et seq.*;

rr.   the Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-199, *et seq.*;

ss.   the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010, *et seq.*;

tt.   the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101, *et seq.*;

uu.   the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; and

vv.   the Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-101, *et seq.*

195.   The acts, practices, misrepresentations, and omissions by Defendants described above, and Defendants' dissemination of deceptive and misleading advertising and marketing materials in connection therewith, occurring in the course of conduct involving trade or commerce, constitute unfair methods of competition and unfair or deceptive acts or practices within the meaning of each of the above-enumerated statutes.

196.   Defendants' acts and practices created a likelihood of confusion or of misunderstanding and misled, deceived, or damaged Plaintiff and members of the Class in connection with the sale or advertisement of Rad e-bikes. Defendants' conduct also constituted the use or employment of deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived, or damaged in violation of each of the above-enumerated statutes.

HAGENS BERMAN

197.   Plaintiff, on behalf of himself and the other members of the Class, seeks monetary damages, treble damages and such other and further relief as set forth in each of the above enumerated statutes.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Class, respectfully requests that this Court:

A.   Certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class representative; and appoint Plaintiff's counsel as Class Counsel;

B.   Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace all Defective e-bikes and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff and Class members with appropriate curative notice regarding the existence and causes of the defects;

C.   Award Plaintiff and Class members actual, compensatory, general, special, incidental, statutory, punitive, and consequential damages, costs, and disgorgement in an amount to be determined at trial;

D.   Award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

E.   Award pre- and post-judgment interest at the maximum legal rate; and

F.   Grant all such other relief as is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all claims so triable.

**HAGENS BERMAN**

1    Dated: September 15, 2023              Respectfully submitted,

2                                           **HAGENS BERMAN SOBOL SHAPIRO LLP**

3
                                            By: */s/ Steve W. Berman*
4                                                 Steve W. Berman (SBN 12536)
                                            1301 Second Avenue, Suite 2000
5                                           Seattle, WA 98101
                                            Telephone: (206) 623-7292
6                                           Facsimile:  (206) 623-0594
                                            Email:  steve@hbsslaw.com
7
8                                           Elizabeth A. Fegan (*pro hac vice* to be filed)
                                            Megan E. Shannon (*pro hac vice* to be filed)
9                                           FEGAN SCOTT LLC
                                            150 S. Wacker Dr., 24th Floor
10                                          Chicago, IL 60606
                                            Phone: 312.741.1019
11                                          Fax: 312.264.0100
                                            beth@feganscott.com
12                                          megan@feganscott.com

13                                          Melissa Ryan Clark (*pro hac vice* to be filed)
                                            FEGAN SCOTT LLC
14                                          140 Broadway, 46th Floor
                                            New York, NY 10005
15                                          Phone: 332.216.2101
                                            Fax: 917.725.9346
16                                          melissa@feganscott.com

17                                          *Attorneys for Plaintiffs and Proposed Class*
                                            *Counsel*
18

19

20

21

22

23

24

25

26

27

28